**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RONALD ROSS,

                        Petitioner,

v.

RONALD OLIVER,[1] et al.,

                      Respondents.

Case No. 2:14-cv-01527-JCM-BNW

**ORDER DENYING
FIRST-AMENDED PETITION
FOR WRIT OF HABEAS CORPUS
UNDER 28 U.S.C. § 2254**

**[ECF No. 17]**

      Petitioner Ronald Ross, a Nevada prisoner, has filed a counseled first-amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 17). This matter is before this court for adjudication of the merits of the remaining grounds[2] in the first-amended petition, which alleges that his rights to confront witnesses, a speedy trial, and the effective assistance of counsel were violated. (ECF No. 17). For the reasons discussed below, this court denies the first-amended petition.

**I.**    **BACKGROUND**

    **A.**    **Factual background[3]**

      Georgia Stathopoulos testified that on March 17, 2007, at around 1:00 p.m., she had just finished eating at the buffet at the Tropicana Hotel and Casino in Las Vegas, Nevada, when she

---

[1]The state corrections department's inmate locator page reveals that Ross is incarcerated at Southern Desert Correctional Center. Ronald Oliver is the current warden for that facility.  At the end of this order, this court kindly requests that the Clerk of the Court substitute Ronald Oliver as a respondent for Respondent Calvin Johnson. *See* Fed. R. Civ. P. 25(d).

[2]This court previously dismissed grounds 3 and 4(h) as untimely. (ECF No. 65, at 11).

[3]This court makes no credibility findings or other factual findings regarding the truth or falsity of the evidence from the state court. This court's summary is merely a backdrop to its consideration of the issues presented in the case.

and her husband stopped at some slot machines. (ECF No. 18-32, at 126–128). Stathopoulos, who had her purse hung over her shoulder, was approached by Ross and another man. (*Id.*, at 131). The men asked Stathopoulos "how the slot machine [she was] playing operated," and chatted with her for "[j]ust a couple of minutes." (*Id.*, at 133–134). When Stathopoulos got to her hotel room a short time later, she noticed that her wallet was missing from her purse. (*Id.*, at 135). Stathopoulos was later informed that her credit card had been used at Sheikh Shoes to make a $490 purchase. (*Id.*, at 136, 140).

Deja Jarmin, an employee at Sheikh Shoes, testified at Ross's preliminary hearing about Ross shopping at the store on March 17, 2007; however, because Jarmin was not available to testify at Ross's trial, his preliminary hearing testimony was read to the jury. (ECF No. 18-32, at 155). According to Jarmin, Ross made a $490 purchase using a credit card, and Jarmin was the cashier who processed the transaction. (*Id.*, at 156). Luis Alverto Valadez, another employee working at Sheikh Shoes, testified that he identified Ross during a photographic lineup and at trial as the person who came into the store on March 17, 2007. (*Id.*, at 173, 175, 181–81). And Kevin Hancock, the assistant manager of Sheikh Shoes, testified that he reviewed the video surveillance footage of the incident and recognized Ross, a somewhat frequent visitor of the store, as the perpetrator. (*Id.*, at 193, 195–96).

Detective William Rader with the Las Vegas Metropolitan Police Department testified that on March 24, 2007, he made the photographic lineup that was later shown to Jarmin, Valadez, and Hancock and that all three men identified Ross. (ECF No. 18-32, at 225, 231–232). Detective Darrell Flenner with the Las Vegas Metropolitan Police Department testified that he obtained surveillance video footage from the Tropicana Hotel and Casino and observed (1) Ross and another man "[t]rying to divert [Stathopoulos's] attention away" from her purse; (2) the other man blocking

Stathopoulos's view of Ross; (3) "Ross hand[ing] off his coat and whatever else would be contained in the coat to the second individual;" and (4) Ross and the other man walking away in different directions. (*Id*., at 233, 237, 240–43). Detective Flenner also observed surveillance video footage from Sheikh Shoes and saw Ross and the same man from the Tropicana Hotel and Casino enter Sheikh Shoes "approximately half an hour to 40 minutes after the incident took place at the Tropicana." (*Id*., at 246–47). Within that surveillance video footage from Sheikh Shoes, Detective Flenner observed Ross making the transaction with the stolen credit card. (*Id*., at 248).

### B.   Procedural background

A jury found Ross guilty of two counts of burglary, larceny from the person, possession of a credit card without the cardholder's consent, fraudulent use of a credit card, theft, and conspiracy to commit larceny. (ECF No. 20-1). Ross was sentenced as a habitual criminal to an aggregate term of life with the possibility of parole after 20 years. (*Id.*). Ross appealed, and the Nevada Supreme Court affirmed on November 8, 2010. (ECF No. 20-7).

Ross petitioned the state court for post-conviction relief on November 30, 2011. (ECF No. 20-9). The state court denied Ross post-conviction relief. (ECF No. 20-24). Ross appealed, and the Nevada Supreme Court affirmed on July 22, 2014. (ECF No. 20-35).

Ross transmitted his *pro se* federal habeas petition to this court on or about September 18, 2014. (ECF No. 1-1). This court appointed counsel to represent Ross, and Ross filed his counseled first-amended petition on June 8, 2015. (ECF No. 17). The respondents moved to dismiss Ross's petition, Ross opposed, and the respondents replied. (ECF Nos. 30, 36, 38). This court granted the motion to dismiss, finding that all grounds in the first amended petition were untimely and did not relate back to the original petition. (ECF No. 39). Judgment was entered in favor of the respondents. (ECF No. 40).

Ross appealed, and the United States Court of Appeals for the Ninth Circuit reversed and remanded on February 24, 2020. *See Ross v. Williams*, 950 F.3d 1160 (9th Cir. 2020) (en banc). The Court of Appeals stayed the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court. (ECF No. 47). The respondents' petition for a writ of certiorari was placed on the Supreme Court's docket on July 28, 2020. (ECF No. 48). The Supreme Court denied the petition for a writ of certiorari on November 9, 2020. *See Daniels v. Ross*, 141 S.Ct. 840 (2020). The Court of Appeals issued a mandate on November 10, 2020, ordering that its February 24, 2020, judgment take effect. (ECF No. 50). This court ordered the mandate spread upon the records of this court on December 7, 2020. (ECF No. 52).

In its February 24, 2020, judgment, the Court of Appeals "remand[ed] for the district court to consider which of the claims in the amended petition (beyond the claim regarding the failure to object to expert testimony . . . ) are supported by facts incorporated into the original petition." (ECF No. 46, at 27). On May 27, 2022, this court reopened this action and set a briefing schedule regarding the remand. (ECF No. 54). Ross responded to this court's order, the respondents filed a response, and Ross replied. (ECF Nos. 55, 60, 63). On December 19, 2022, this court dismissed grounds 3 and 4(h) as untimely and found ground 4(c) to be unexhausted. (ECF No. 65). Ross filed a motion seeking other appropriate relief in regards to ground 4(c), and on May 4, 2023, this court deferred consideration of whether Ross can demonstrate cause and prejudice to overcome the procedural default of ground 4(c) until after the filing of an answer and reply. (ECF No. 74).

The respondents filed an answer to the first-amended petition on July 3, 2023. (ECF No. 2023). Ross replied and moved for a hearing on January 19, 2024. (ECF Nos. 80, 82). The respondents moved to strike Ross's reply, Ross opposed the motion, and the respondents replied.

(ECF No. 83, 86, 87). The respondents opposed Ross's motion for a hearing, and Ross replied. (ECF No. 88, 89).

## II.     GOVERNING STANDARDS OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id*. (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## III.     DISCUSSION

### A.      Ground 1—right to confront Jarmin

In ground 1, Ross alleges that he was deprived of his right to confront the witnesses against him under the Sixth and Fourteenth Amendments when the prosecution was allowed to admit Jarmin's preliminary hearing testimony. (ECF No. 17, at 7). Ross explains that the prosecution did not make a sufficient showing that Jarmin was unavailable and did not make reasonable efforts to corroborate Jarmin's whereabouts. (*Id.*, at 7–9).

#### 1.      Background information

During a break in voir dire on the first day of trial, the prosecution informed the state court that Jarmin was "in a hospital in California for heart reasons." (ECF No. 18-32, at 84). The prosecutor's investigator, Matthew Johns, then testified outside the presence of the jury to the following: (1) he started serving the subpoenas for Ross's trial on October 16, 2008, approximately a month before the start of the trial; (2) he contacted Jarmin's girlfriend three times at the address the prosecution had on file for him; (3) he called Jarmin "approximately 10 to 15" times in the

month leading up to the trial; (4) he was unable to contact Jarmin in person or by telephone; (5) he learned from Jarmin's girlfriend "that she learned [the Friday before the start of the trial] that [Jarmin] had been admitted to a hospital in San Bernadino, where his family is, due to a heart condition;" and (6) he tried unsuccessfully that morning to contact Jarmin's family in San Bernadino. (*Id*., at 85–89). The prosecutor made an oral motion requesting that Jarmin's preliminary hearing testimony be used at the trial. (*Id*., at 92).

Ross's trial counsel then made, *inter alia*, the following arguments in opposition to the prosecutor's motion: (1) allowing the prosecution to read Jarmin's preliminary hearing transcript would violate Ross's right to confront and cross-examine the witnesses against him; (2) he did not have a fair chance to question Jarmin because he did not question Jarmin at the preliminary hearing like he would do at trial; and (3) Jarmin was the only witness "who can place recently stolen property in the hands of [Ross]." (*Id*., at 95–98). Ross's trial counsel then asked that either the state court continue the trial, or the prosecution dismiss the counts involving the shoe store. (*Id*., at 98).

The state court granted the prosecution's motion, finding that (1) the prosecution showed good cause to excuse the untimeliness of their motion, and (2) the prosecution "show[ed] reasonable diligence to have [Jarmin] here." (*Id*., at 101). Jarmin's preliminary hearing testimony was later read at the trial. (*Id*., at 154).

### 2.    State court determination

In affirming Ross's judgment of conviction, the Nevada Supreme Court held:

Fifth, Ross argues that the district court violated his Sixth Amendment Confrontation Clause rights when it found a witness unavailable and allowed the witness's preliminary hearing testimony to be read to the jury. On the first day of Ross' trial, the State informed the district court that a key witness had been hospitalized in California and made a motion to use the transcript in lieu of live testimony. The court heard sworn testimony from the State's investigator and ruled

that the State's efforts had been reasonable in attempting to procure the witness for trial. We disagree with Ross' contention that this ruling was erroneous, particularly in light of his concession at trial that the State had indeed done all it could to procure the witness's presence. Instead, Ross contended, as he does now, that the opportunity for cross-examination at the preliminary hearing was so limited that the transcript's entry into evidence at trial violated his constitutional right to confront the witness.

Again, we disagree, while preliminary hearings can provide an adequate opportunity for confrontation, determinations are made on a case-by-case basis. *See Chavez v. State*, 125 Nev. ___, 213 P.3d 476, 483-84 (2009). In this case, the magistrate allowed Ross an unrestricted opportunity to question the witness: Ross asked him over 50 questions, probing his recollection of his interaction with Ross and whether he had any independent memory of the credit transaction he processed. Additionally, Ross does not specify what discovery had not been made available to him by the time of the preliminary hearing, aside from the video that was unintentionally destroyed and other videos that were collateral to the percipience of that witness. Accordingly, we conclude that Ross was afforded an adequate opportunity to examine the witness and his Confrontation Clause rights were not violated by the admission of the witness's preliminary hearing testimony. *See Chavez*, 125 Nev. at 213 P.3d at 485-86. Finally, we note that because the testimony was duplicative of another witness—who testified at trial that Ross was a regular patron of the store and that he recognized Ross as the individual who was captured on video making the fraudulent transaction—any error was harmless beyond a reasonable doubt. *See Hernandez v. State*, 124 Nev. 639, 652, 188 P.3d 1126, 1135-36 (2008).

(ECF No. 20-7, at 4–5).

### 3. Confrontation Clause

The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." "[A] primary interest secured by [the Confrontation Clause] is the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). While "the Confrontation Clause guarantees an *opportunity* for effective cross-examination," it does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (emphasis in original) (internal quotation marks omitted); *see also Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) ("[T]he Confrontation Clause's functional purpose i[s]

ensuring a defendant an opportunity for cross-examination."). The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). "[A] witness is not 'unavailable' . . . unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724–25 (1968); *see also Christian v. Rhode*, 41 F.3d 461, 467 (9th Cir. 1994) ("The lengths to which a prosecutor must go to establish good faith is a question of reasonableness."). If "[a] Confrontation Clause violation" occurs, this court conducts a harmless error analysis. *Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993) (holding that habeas relief is proper only if an error by the state courts "had substantial and injurious effect or influence in determining the jury's verdict")).

### 4.   Analysis

The Nevada Supreme Court reasonably concluded that Ross's right to confront Jarmin was not violated by the admission of Jarmin's preliminary hearing testimony. *Crawford*, 541 U.S. at 53–54. First, as the Nevada Supreme Court reasonably found and as Ross does not appear to dispute, Ross's counsel had an adequate opportunity to cross-examine Jarmin at the preliminary hearing. *See Barber*, 390 U.S. at 725 ("[T]here may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable."); *see also California v. Green*, 399 U.S. 149, 166 (1970) ("If [the witness] had died or was otherwise unavailable, the Confrontation Clause would not have been violated by admitting his testimony given at the preliminary hearing.")

Second, as the Nevada Supreme Court also reasonably found, the prosecution made reasonable, good-faith efforts to obtain Jarmin's presence at the trial. Indeed, the prosecution's investigator testified that he contacted Jarmin's girlfriend in person on three occasions at the address where Jarmin also resided, he attempted to call Jarmin 10 to 15 times prior to the start of the trial, and after learning that Jarmin had been admitted to a hospital in San Bernadino, he attempted to contact Jarmin's family in San Bernadino to verify Jarmin's location.

Ross argues that the only reasonable step would have been for the prosecution to have also called the hospitals in San Bernadino to corroborate if Jarmin was a patient. (ECF No. 17, at 9 (citing 45 CFR 164.510(a)(1)(ii)(B) (providing that a health provider may disclose an individual's name for directory purposes)). While the prosecution did not go to such lengths to verify Jarmin's whereabouts, Ross fails to demonstrate that such exhaustive corroboration was required for the prosecution to demonstrate it had exercised reasonable, good-faith efforts to obtain Jarmin's presence. *See Ohio v. Roberts*, 448 U.S. 56, 76 (1980) (explaining that "the great improbability that such [additional] efforts [to locate a witness] would have resulted in locating the witness, and would have led to her production at trial, neutralizes any intimation that a concept of reasonableness required their execution"), *abrogated on other grounds by Crawford*, 541 U.S. 36.

Accordingly, because the Nevada Supreme Court's determination that Ross's right to confront the witnesses against him was not violated constituted an objectively reasonable application of *Crawford* and was not based on an unreasonable determination of the facts, Ross is denied federal habeas relief for ground 1.

**B.     Ground 2—right to a speedy trial**

Ross alleges that he was deprived of his right to a speedy trial under the Sixth and Fourteenth Amendments. (ECF No. 17, at 9).

### 1.      Background information

Ross first appeared in custody in this case on June 7, 2007. (ECF No. 18-6, at 2).

The prosecution filed an information and an amended information, outlining the charges against Ross on August 22, 2007, and August 23, 2007, respectively. (ECF Nos. 18-13, 18-14). Ross's arraignment was held on September 5, 2007, and Ross pleaded not guilty and invoked his right to a speedy trial. (ECF No. 18-16). The state court set the trial for October 22, 2007. (ECF No. 18-17, at 2).

At the status check hearing held on October 11, 2007, the prosecution explained the following: (1) Ross had two other similar criminal cases pending; (2) one of the those cases was dismissed and an appeal filed with the Nevada Supreme Court; (3) the prosecution was seeking to consolidate Ross's charges in the current case with the charges in his other case; and (4) a status check was needed to see what the Nevada Supreme Court was going to do with Ross's dismissed case. (ECF No. 18-19). The state court vacated the trial date and set another status check. (*Id*.).

At the next status check, held on December 11, 2007, the prosecution explained the following: (1) Ross moved to dismiss his other pending criminal case, and following the state court's denial of that motion, Ross filed an appeal with the Nevada Supreme Court; and (2) the legal issues from the two cases pending with the Nevada Supreme Court "are present in this case, so should the ruling[s] go in Mr. Ross' favor, . . . it would basically be an automatic retrial in this case." (ECF No. 18-20, at 3). In response, Ross's trial counsel requested that Ross's bail be reduced because he wished to return to prison to finish serving his sentence on a different case rather than waiting in the jail for the Nevada Supreme Court to make rulings on his pending criminal cases. (*Id*.). Ross's trial counsel stated that if the state court could reduce his bail and have him moved to the prison, "then [Ross] can wait as long as it takes." (*Id*., at 4). The state court refused to lower

Ross's bail at that time, told Ross's trial counsel he could file a formal motion requesting that bail be reduced, and set another status check in six months. (*Id*., at 5).

At the next status check, held on June 10, 2008, it was represented that Ross was located at the prison. (ECF No. 18-21, at 3). The parties then explained that the Nevada Supreme Court denied Ross's appeal of the state court's denial of his motion to dismiss in his other pending criminal case, and Ross's other pending case was on calendar in a few weeks to set that case for trial. (*Id*.). The state court continued the status check until after Ross's trial was set in his other matter due to the pending motion to consolidate in that case. (*Id*.).

At the next status check, held on July 8, 2008, it was explained that Ross's trial in his other matter was set for November 10, 2008, and because Ross explained that he had never waived his right to a speedy trial and wished to reinvoke his right in the instant case, the state court set the instant matter for trial for September 2, 2008. (ECF No. 18-22). Calendar call hearings were held on August 26, 2008, and September 2, 2008, but Ross was not transported from the prison for either of those hearings, so the state court vacated the trial date. (ECF Nos. 18-26, 18-24). A status check hearing was again held on September 16, 2008, and the trial was set for the earliest date on the court's calendar: November 10, 2008. (ECF No. 18-25). Ross then made the following statement:

> I want to object for the record of any continuance because this case has been going on for four hundred and seventy-eight days. I asked my attorney to file a motion for me based on a speedy trial. He said he was going to bring it to the Court's attention, but I just wanted to know - - I just want it to be on the record that I'm asserting my right to a speedy trial and I'm objecting to any delay. This is the second or third time that my trial has been set.

(*Id*., at 7). Ross's trial commenced on November 12, 2008. (ECF No. 18-32).

### 2.    State court determination

1    In affirming Ross's judgment of conviction, the Nevada Supreme Court held:

2        First, Ross contends that his statutory and constitutional rights to a speedy
         trial were violated. Ross' trial began fourteen months after his arraignment. The
3        record shows that Ross invoked his speedy-trial right at his arraignment but that
         further proceedings were continued at the State's and Ross' joint request to await
4        the disposition of two pretrial appeals. After the appeals were decided eight months
         later, a new trial date was set. That date was further delayed because of the court's
5        schedule. Ross fails to prove that the delay prejudiced him. Further, the record
         reveals no evidence that the State caused the delay or otherwise failed to make
6        good-faith efforts to bring Ross to trial and his speedy-trial claims therefore lack
         merit. *See Furbay v. State*, 116 Nev. 481, 484-85, 998 P.2d 553, 555 (2000); *see
7        also Anderson v. State*, 86 Nev. 829, 833, 477 P.2d 595, 598 (1970) (constitutional
         deprivation of right to speedy trial requires proof of prejudice attributable to delay).

8

9    (ECF No. 20-7, at 2–3).

10                  **3.    De novo review**

11        Ross contends that this court should not defer to the Nevada Supreme Court's holding

12   because it was based on an unreasonable determination of the facts. (ECF No. 80, at 40).

13   Specifically, Ross contends that the Nevada Supreme Court incorrectly calculated his speedy trial

14   clock as starting at his arraignment rather than the date of his arrest. (*Id.*).

15        Because Ross's speedy trial right attached at the time of his arrest, making the length of

16   his speedy trial clock 17 months rather than 14 months, the Nevada Supreme Court's holding was

17   based, at least in part, on an unreasonable determination of the facts. *See United States v. Marion*,

18   404 U.S. 307, 320 (1971) ("[I]t is either a formal indictment or information or else the actual

19   restraints imposed by arrest and holding to answer a criminal charge that engage the particular

20   protections of the speedy trial provision of the Sixth Amendment"). As such, this claim will be

21   reviewed de novo. *See Panetti v. Quarterman*, 551 U.S. 930, 948 (2007) ("As a result of [the state

22   court's] error, our review of petitioner's underlying . . . claim is unencumbered by the deference

23   AEDPA normally requires"); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine,

1   considering only the evidence before the state court, that . . . the state court's decision was based

2   on an unreasonable determination of the facts, we evaluate the claim de novo.").

3         **4.**    **Standard**

4        Although the right to a speedy trial is "one of the most basic rights preserved by our

5   Constitution," *Klopfer v. North Carolina,* 386 U.S. 213, 226 (1967), there is no fixed measure to

6   determine when the right has been violated. Rather, "any inquiry into a speedy trial claim

7   necessitates a functional analysis of the right in the particular context of the case." *Barker v. Wingo*,

8   407 U.S. 514, 522 (1972); *see also Beavers v. Haubert*, 198 U.S. 77, 87 (1905) ("The right of a

9   speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances.").

10  In determining whether a defendant's right to a speedy trial has been violated, a balancing test is

11  used, "in which the conduct of both the prosecution and the defendant are weighed." *Barker*, 407

12  U.S. at 530. The primary factors to be considered in this balancing test are the "[l]ength of [the]

13  delay, the reasons for the delay, the defendant's assertion of his right, and prejudice to the

14  defendant." *Id.* The first factor, "[t]he length of the delay[,] is to some extent a triggering

15  mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for

16  inquiry into the other factors that go into the balance." *Id.*

17        **5.**    **Analysis**

18       There is enough delay in this case—17 months from the time Ross first appeared in custody

19  before the state justice court until the first day of his trial—to bring the *Barker* factors into play.

20  *See Doggett v. United States,* 505 U.S. 647, 652 n.1 (1992) (holding that delays approaching one

21  year are presumptively prejudicial); *see also United States v. Beamon*, 992 F.2d 1009, 1014 (9th

22  Cir. 1993) (noting that the seventeen-month and twenty-month delays in that case were only five

23  to eight months longer than the one-year benchmark that triggers the speedy trial inquiry under

*Barker*); *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992) (finding a general consensus that around eight months is presumptively prejudicial). Thus, turning to the *Barker* factors, first, the length of delay here was 17 months. Second, the reasons for the delay were (1) the desire to await the disposition of Ross's two other criminal appeals, (2) the negligence resulting from Ross not being transported from prison to the state court for status checks, and (3) the dictates of the state court's calendar. Third, Ross invoked his right to a speedy trial at his arraignment. And fourth, Ross was allegedly prejudiced by the delays because (1) Jarmin was no longer able to testify and (2) other witnesses' memories were weakened. (ECF No. 80, at 37–39).

Based on the circumstances of this case and balancing the four *Barker* factors, this court concludes that Ross's right to a speedy trial was not violated: the length of delay was not extraordinary; the reasons for the delay were, at least in part, unavoidable; and although Ross invoked his right to a speedy trial, he fails to demonstrate appreciable prejudice. Regarding the final point, prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect," including "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. Although Ross was subject to pretrial incarceration, it appears that he was sent to prison to serve his sentence for an unrelated criminal case while awaiting his trial in the instant case. And although Jarmin was no longer able to testify due to the delay, Jarmin was a prosecution witness, and his unavailability only resulted in minimal impairment to the defense given that Ross's trial counsel cross-examined him at the preliminary hearing. Therefore, Ross is denied federal habeas relief for ground 2.

**C.      Ground 4—right to the effective assistance of counsel**

In ground 4, Ross alleges that he was deprived of his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments. (ECF No. 17, at 14). This court will address Ross's seven remaining ineffective-assistance-of-counsel claims in turn.

**1.   Standard for effective assistance of counsel claims**

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104–05. In *Richter*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id*. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's Strickland determination

under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### 2. Ground 4(a)—failure to protect right to speedy trial

In ground 4(a), Ross alleges that his trial counsel failed to protect his right to a speedy trial. (ECF No. 17, at 14).

### a. State court determination

In affirming the denial of Ross's state habeas petition, the Nevada Supreme Court held:

> Second, appellant argues that counsel was ineffective for violating appellant's right to a speedy trial. Appellant has failed to demonstrate deficiency or prejudice. This court has previously held that appellant's right to a speedy trial was not violated, *Ross v. State*, Docket No. 52921 (Order of Affirmance, November 8, 2010), and that holding is the law of the case, *Hall v. State*, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975). Thus appellant cannot demonstrate that any action or inaction of counsel violated the right. Moreover, appellant's claim that he was prejudiced because the delayed trial resulted in the loss of the shoe store surveillance video was patently without merit where the video was destroyed before appellant was arrested and was thus unavailable for trial regardless of when it was held. We therefore conclude that the district court did not err in denying this claim without an evidentiary hearing.

(ECF No. 20-35, at 3).

### b. De novo review

Ross contends that this court should not defer to the Nevada Supreme Court's holding because it relied on its direct appeal holding which was unreasonable for the reasons discussed in ground 2. (ECF No. 80, at 46). This court agrees and reviews this claim de novo. *See Panetti*, 551 U.S. at 948; *Hurles*, 752 F.3d at 778.

c.        **Analysis**

Even if Ross's trial counsel acted deficiently by not filing a motion seeking to enforce his speedy trial rights or by not objecting to the continuances, Ross fails to demonstrate resulting prejudice. Similar to ground 2, Ross argues that if his trial counsel demanded that he receive a speedy trial, then (1) Jarmin would have been able to testify and (2) the other witnesses' memories would not have weakened. (ECF No. 80, at 45–46). However, even assuming the trial court took favorable action on Ross's trial counsel's demands about Ross's speedy trial rights, which is not readily apparent, Ross fails to demonstrate that the result of his trial would have been different had Jarmin testified or had the other witnesses' memories been sharper. *See Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not established by mere speculation."). Ross is denied federal habeas relief for ground 4(a).

3.        **Ground 4(b)—failure to communicate**

In ground 4(b), Ross alleges that his trial counsel failed to communicate with him prior to trial. (ECF No. 17, at 16).

a.        **Background information**

At a pre-trial hearing held on October 23, 2008, the state court explained that Ross had sent a letter explaining that he was not happy with his trial counsel because "he'd been languishing over five hundred days and he has not had a lot of contact with his lawyer." (ECF No. 18-26, at 3). Five days later, on October 28, 2008, Ross filed a motion for a *Faretta* hearing. (ECF No. 18-27). The state court held a hearing on Ross's motion, and Ross explained that he and his trial counsel had been "having some conflict about the way [he] think[s] that we should go about [the] defense." (ECF No. 18-29, at 4). The state court ordered Ross's trial counsel "to come down and speak with [Ross] today and the next couple days this week to . . . come to some agreement." (*Id.*,

at 4–5). Ross's trial counsel explained that he was meeting with the prosecutor that afternoon "to make sure that [he had] got everything she's got" but that he would meet with Ross the next day or the following day. (*Id.*, at 5).

### b.    State court determination

In affirming the denial of Ross's state habeas petition, the Nevada Supreme Court held:

> Third, appellant argues that counsel was ineffective because a communication breakdown prevented appellant from being able to assist counsel in the preparation of his defense, including explaining his conduct or offering any potential alibis. Appellant has failed to demonstrate deficiency or prejudice. The only specific information appellant alleged was regarding his alibi for the theft at the Santa Fe casino, but the State moved to dismiss those charges before trial such that, even if his claims were true, appellant could not demonstrate a reasonable probability of a different outcome had there been better communication. Appellant otherwise failed to specify what explanation or alibi he would have given counsel or how it would have affected the outcome at trial. *See Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984) (holding that a petitioner is not entitled to an evidentiary hearing where his claims are unsupported by specific factual allegations that, if true, would have entitled him to relief). We therefore conclude that the district court did not err in denying this claim without an evidentiary hearing.

(ECF No. 20-35, at 4).

### c.    Analysis

Defense counsel has a duty to "consult with the defendant on important decisions and to keep the defendant informed of important developments." *Strickland*, 466 U.S. at 688. Ross fails to demonstrate that his trial counsel did not meet these consultation duties. It appears from the record that communication between Ross and his trial counsel may have been limited, especially in the months leading up to trial. However, even if Ross wished to meet with his trial counsel on more occasions, the Nevada Supreme Court reasonably concluded that Ross failed to demonstrate

that his trial counsel acted deficiently.[4] *See Strickland*, 466 U.S. at 688; *see also Morris v. Slappy*, 461 U.S. 1, 14 (1983) ("[R]eject[ing] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel.").

Moreover, the Nevada Supreme Court also reasonably determined that Ross failed to demonstrate prejudice. Ross argues that the lack of communication with his trial counsel prejudiced him because (1) counsel did not safeguard his speedy trial rights, (2) counsel did not develop a trial strategy with Ross, and (3) the lack of communication otherwise prevented the preparation of an adequate defense. (ECF No. 80, at 51). Ross's first contention was discussed and rejected in ground 4(a), and Ross's second two contentions lack sufficient explanation, since Ross does not explain what trial strategy could have been developed or what further preparations were needed. *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (denying habeas relief because the petitioner's "conclusory allegations did not meet the specificity requirement"); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

Because the Nevada Supreme Court's holding constituted an objectively reasonable application of *Strickland*'s performance and prejudice prongs and was not based on an unreasonable determination of the facts, Ross is denied federal habeas relief for ground 4(b).

### 4.   Ground 4(c)—failure to seek sanctions for a discovery violation

In ground 4(c), Ross alleges that his trial counsel failed to seek appropriate sanctions, such as preclusion of the evidence or an adverse inference instruction, based on a discovery violation,

---

[4]Further, to the extent alleged, Ross fails to demonstrate an irreconcilable conflict with his counsel due to the alleged breakdown in their communication. *See Carter v. Davis*, 946 F.3d 489 (9th Cir. 2019).

namely the failure to gather and preserve the surveillance video from Shiekh Shoes. (ECF No. 17, at 17).

### a.    Procedural default

This court previously determined that ground 4(c) was technically exhausted and procedurally defaulted. (ECF No. 74, at 2). This court then deferred a decision on whether Ross can demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012) to overcome that procedural default until after the parties filed an answer and reply brief on the merits. (*Id*., at 2–3). Under *Martinez*, a petitioner can demonstrate cause to potentially overcome the procedural default of a claim of ineffective assistance of trial counsel by demonstrating that either (a) he had no counsel during the state postconviction proceedings or (b) such counsel was ineffective. *Martinez*, 566 U.S. at 14.

To demonstrate "prejudice" under *Martinez*, the petitioner must show that the defaulted claim of ineffective assistance of trial counsel is a "substantial" claim. *Id*. A claim is "substantial" for purposes of *Martinez* if it has "some merit." *Id*. This standard does not require a showing that the claim will succeed, but instead only that its proper disposition could be debated among reasonable jurists. *See generally Miller-El v. Cockrell*, 537 US. 322, 336–38 (2003).

Accordingly, the principal issues before this court, in context,[5] are: (1) whether ground 4(c) is substantial; (2) if so, whether Ross's state post-conviction counsel was ineffective in raising this claim in the state district court; and (3) if so, whether, on the merits, Ross was denied effective assistance of trial counsel. *See*, *e.g.*, *Atwood v. Ryan*, 870 F.3d 1033, 1059–60 (9th Cir. 2017);

---

[5]It has not been disputed that (1) a state post-conviction proceeding in the state district court was an initial-review collateral proceeding for purposes of *Martinez*, or (2) that Nevada procedural law sufficiently requires an inmate to present a claim of ineffective assistance of trial counsel for the first time in that proceeding for purposes of applying the *Martinez* rule. *See generally Rodney v. Filson*, 916 F.3d 1254, 1259–60 (9th Cir. 2019).

*Detrich v. Ryan*, 740 F.3d 1237, 1243–46 (9th Cir. 2013). On all such issues, this court's review is *de novo*. *See Ramirez v. Ryan*, 937 F.3d 1230, 1243 (9th Cir. 2019); *Atwood*, 870 F.3d at 1060 n.22.

### b.  Background information

At the preliminary hearing, Detective Flenner testified that the manager of Sheikh Shoes "showed [him] a DVD of the transaction [at Sheikh Shoes], which showed Ross and the other same subject [from the Tropicana Hotel and Casino] in the store." (ECF No. 18-9, at 26). The surveillance footage was on "a hard drive, a DVD system," but Detective Flenner was unable to obtain a copy of the video because "[n]obody knew how to operate the system to save it." (*Id.*, at 26–27). The manager told Detective Flenner he would try to save the video. (*Id.*, at 27). However, it appears that this never occurred because the video was not produced at the trial.

### c.  Nevada law on the failure to gather evidence

Under Nevada law, if two factors are met, "a failure to gather evidence may warrant sanctions against the State." *Randolph v. State*, 36 P.3d 424, 435 (Nev. 2001). First, "[t]he defense must . . . show that the evidence was material, *i.e.*, that there is a reasonable probability that the result of the proceedings would have been different if the evidence had been available." *Id*. "Second, if the evidence was material, the court must determine whether the failure to gather it resulted from negligence, gross negligence, or bad faith." *Id*. "In the case of mere negligence, no sanctions are imposed, but the defendant can examine the State's witnesses about the investigative deficiencies; in the case of gross negligence, the defense is entitled to a presumption that the evidence would have been favorable to the State; and in the case of bad faith, depending on the case as a whole, dismissal of the charges may be warranted." *Id*.

### d.  Analysis

Ross fails to demonstrate the presence of either factor identified in *Randolph*. First, it is mere conjecture that the surveillance video from Shiekh Shoes was material. And even if this court were to assume, *arguendo*, that the surveillance video was material, Ross fails to show that Detective Flenner acted with gross negligence or bad faith in failing to collect the surveillance video. Indeed, Detective Flenner unsuccessfully attempted to obtain a copy of the video while he was at Shiekh Shoes and was then told by the store manager that a later attempt to obtain a copy of the video would be made. (ECF No. 18-9, at 26–27). As such, because sanctions would not have been imposed for Detective Flenner's mere negligence, Ross's trial counsel's request for sanctions would not have been fruitful. *See Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986) (explaining that in alleging that counsel failed to file a pretrial motion to suppress evidence, the petitioner must establish, in part, a reasonable probability that the evidence would have been suppressed). Thus, Ross fails to demonstrate deficiency or prejudice under *Strickland*. Because Ross's ineffective assistance of trial counsel claim is not substantial, Ross fails to demonstrate requisite prejudice necessary to overcome the procedural default of ground 4(c). Ground 4(c) is dismissed.

### 5.    Ground 4(d)—failure to object based on the best evidence rule

In ground 4(d), Ross alleges that his trial counsel failed to object to the testimony about the Sheikh Shoes's surveillance video footage based on the best evidence rule. (ECF No. 17, at 19).

### a.    State court determination

In affirming the denial of Ross's state habeas petition, the Nevada Supreme Court held:

Seventh, appellant argues that counsel was ineffective for failing to renew at trial his preliminary-hearing objection for violating the best evidence rule. Appellant's bare claim has failed to demonstrate deficiency or prejudice where he does not identify the objection that counsel should have renewed. To the extent appellant is claiming, as he did below, that counsel should have renewed an objection to testimony about the shoe store surveillance video on the grounds that it was not the

best evidence, counsel made no such objection at the preliminary hearing that he could have renewed at trial. Moreover, even had counsel objected to testimony about the video, the law of the case is that the best-evidence-rule exception in NRS 52.255(1) was satisfied. *Ross v. State*, Docket No. 52921 (Order of Affirmance, November 8, 2010)[6]; *see also Hall*, 91 Nev. at 315-16, 535 P.2d at 798-99. Accordingly, there was no reasonable probability that the district court would have sustained the objection and, thus, of a different outcome at trial. We therefore conclude that the district court did not err in denying this claim without an evidentiary hearing.

(ECF No. 20-35, at 6).

### b.   Analysis

The Nevada Supreme Court reasonably determined that Ross failed to demonstrate prejudice from his trial counsel's lack of an objection to the testimony about the surveillance video based on the best evidence rule. Nevada law provides that "the original [evidence] is not required, and other evidence of the contents of [the evidence] is admissible if . . . [a]ll originals are lost or have been destroyed, unless the loss or destruction resulted from the fraudulent act of the proponent." NEV. REV. STAT. § 52.255(1). As the Nevada Supreme Court reasonably noted, this statute was satisfied: the loss of the surveillance footage was the result, at most, of Detective Flenner's negligence. There is no evidence that the video was fraudulently lost. Because the Nevada Supreme Court's holding constituted an objectively reasonable application of *Strickland*'s

---

[6]On direct appeal, the Nevada Supreme Court held as follows:

Ross claims that it was plain error for the district court to allow witnesses to testify about a surveillance video without producing that video for trial, in contravention of the best-evidence rule. . . . Several witnesses testified that they viewed the recording just after the victim's report of the fraudulent transaction and immediately recognized Ross as the individual purchasing merchandise with the victim's stolen credit card. The video was later recorded over because none of the store employees had the technological ability to preserve it. Under these circumstances, we conclude that NRS 52.255(1) was satisfied and there was no violation of Ross' substantial rights.

(ECF No. 20-7, at 3).

prejudice prong and was not based on an unreasonable determination of the facts, Ross is denied federal habeas relief for ground 4(d).

### 6. Ground 4(e)—failure to object to expert testimony

In ground 4(e), Ross alleges that his trial counsel failed to object to Detective Flenner's unnoticed expert testimony on "distract thefts." (ECF No. 17, at 21).

#### a. Background information

Detective Flenner testified that he had experience with tourist-related crimes. (ECF No. 18-32, at 234). He explained the definition of a distract theft: "you'll have one person that actually does a distract on somebody, diverting their attention away, . . . while a second person is actually taking items." (*Id.*, at 235). Detective Flenner then testified that he reviewed the surveillance video from the Tropicana Hotel and Casino and that he identified (1) the men attempting to divert Stathopoulos's attention away from her purse, (2) the second man moving in close to Stathopoulos to block her view of Ross, (3) Ross handing the second man "his coat and whatever else would be contained in the coat," and (4) the men walking off in different directions. (*Id.*, at 237, 240–43).

#### b. State court determination

In affirming the denial of Ross's state habeas petition, the Nevada Supreme Court held:

> Fourth, appellant argues that counsel was ineffective for failing to object to expert testimony pertaining to pickpockets and distraction thefts where the witness was not noticed as an expert.
>
> [FN1] Appellant's opening brief refers to transcript pages containing the testimony of Detective Rader. However, Detective Rader did not testify to the allegedly objectionable facts. Rather, Detective Flenner did, and appellant's petition and supplement below both raise this claim in conjunction with Detective Flenner. Accordingly, our analysis of this claim is in regard to the testimony of Detective Flenner.
>
> Appellant has failed to demonstrate deficiency or prejudice. Appellant made only a bare allegation that the detective's testimony amounted to expert opinion. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so

presented need not be addressed by this court."). Further, even assuming that the detective did give expert testimony that was not noticed pursuant to NRS 174.234(2), appellant made no allegation that the omission was made in bad faith such that the district court would have excluded the testimony. *See* NRS 174.234(3)(b). We therefore conclude that the district court did not err in denying this claim without an evidentiary hearing.

(ECF No. 20-35, at 4–5).

### c.   Analysis

Nevada law requires a party to provide pre-trial written notice of any expert witness. NEV. REV. STAT. § 174.234(2). An expert witness is defined as someone having "scientific, technical or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." NEV. REV. STAT. § 50.275. Contrarily, a lay witness may testify to opinions or inferences that are "[r]ationally based on the perception of the witness; and . . . [h]elpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." NEV. REV. STAT. § 50.265. According to Nevada law, "[t]he key to determining whether testimony about information . . . constitutes lay or expert testimony lies with a careful consideration of the substance of the testimony—does the testimony concern information within the common knowledge of or capable of perception by the average layperson or does it require some specialized knowledge or skill beyond the realm of everyday experience?" *Burnside v. State*, 352 P.3d 627, 636 (Nev. 2015).

As the Nevada Supreme Court appears to have reasonably concluded, Ross fails to demonstrate that Detective Flenner's testimony amounted to expert testimony. Detective Flenner explained that a common theft of tourists occurs when one individual distracts the person and the other individual steals their property. This testimony does not arise to the level of "scientific, technical or other specialized knowledge" under NRS § 50.275. Rather, a layperson can determine

whether a "distract theft" has occurred through his or her everyday life experiences. *See Burnside*, 352 P.3d at 632 (holding that while "the cell phone company employee's testimony related to how cell phone signals are transmitted constituted expert testimony because it required specialized knowledge[,] . . . a police officer's testimony about information on a map that he had created to show the location of the cell towers used by the defendants' cell phones constituted lay testimony."). Because an objection to Detective Flenner's alleged expert testimony would have been overruled, Ross's trial counsel's failure to make such an objection did not amount to ineffective assistance of counsel. Accordingly, the Nevada Supreme Court's holding constituted an objectively reasonable application of *Strickland* and was not based on an unreasonable determination of the facts, so Ross is denied federal habeas relief for ground 4(e).

### 7.        Ground 4(f)—failure to call a defense expert

In ground 4(f), Ross alleges that his trial counsel failed to call a defense expert to challenge Detective Flenner's "distract theft" testimony. (ECF No. 17, at 22).

#### a.        State court determination

In affirming the denial of Ross's state habeas petition, the Nevada Supreme Court held:

> Fifth, appellant argues that counsel was ineffective for failing to retain a defense expert to rebut the expert testimony of Detective Flenner. Appellant has failed to demonstrate deficiency or prejudice. Appellant, who acknowledges that Detective Flenner was not noticed as an expert witness, has failed to demonstrate that counsel was objectively unreasonable in failing to anticipate the testimony and retain a defense expert to meet it. Moreover, even had a defense expert testified that appellant's actions were also consistent with non-criminal activity, there was no reasonable probability of a different outcome where the victim testified that only appellant was close enough to her to take her wallet and appellant used the victim's stolen credit card shortly after the theft. We therefore conclude that the district court did not err in denying this claim without an evidentiary hearing.

(ECF No. 20-35, at 5).

#### b.        Analysis

The Nevada Supreme Court reasonably determined that Ross failed to demonstrate that his trial counsel acted objectively unreasonable in failing to retain a defense expert witness. Ross contends that the defense needed an expert who "would have opined that the actions on the video were consistent with non-criminal activity and did not fit the behavior of an alleged 'distract theft.'" (ECF No. 17, at 23). However, for the reasons discussed in ground 4(e), because Detective Flenner's testimony did not amount to expert testimony, there was no need to call a rebuttal expert witness. Indeed, even if it was not readily apparent from the surveillance video that a crime had occurred, there was no need to endorse that point with an expert when "cross-examination [would have been] sufficient to expose defects in [Detective Flenner's] presentation." *Richter*, 562 U.S. at 111 (explaining that "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense."). Therefore, because the Nevada Supreme Court's determination constituted an objectively reasonable application of *Strickland*'s performance prong and was not based on an unreasonable determination of the facts, Ross is denied federal habeas relief for ground 4(f).

**8.      Ground 4(g)—failure to object to preliminary hearing testimony**

In ground 4(g), Ross alleges that his trial counsel failed to object to the admission of the preliminary hearing testimony based on the prosecution's failure to make good-faith efforts to find Jarmin. (ECF No. 17, at 23).

**a.      State court determination**

In affirming the denial of Ross's state habeas petition, the Nevada Supreme Court held:

> Sixth, appellant argues that counsel was ineffective for failing to properly challenge the use of a preliminary-hearing transcript in lieu of live testimony at the trial and for not making an offer of proof as to what additional questions counsel would have posed to a live trial witness. Appellant's bare claim has failed to demonstrate deficiency or prejudice. Appellant did not specify what additional efforts the State should have made to procure the witness, what additional questions counsel could

1   have posed to a live witness, or how the results would have led to a reasonable
2   probability of a different outcome at trial. We therefore conclude that the district
    court did not err in denying this claim without an evidentiary hearing.

3   (ECF No. 20-35, at 5–6).

4               **b.**     **Analysis**

5        For the reasons discussed in ground 1, Ross fails to demonstrate that the prosecution failed

6   to make reasonable, good-faith efforts to obtain Jarmin's presence at the trial. Consequently, as

7   the Nevada Supreme Court reasonably concluded, Ross fails to demonstrate deficiency or

8   prejudice regarding his counsel's failure to challenge the admission of Jarmin's preliminary

9   hearing testimony on this basis. Because the Nevada Supreme Court's determination constituted

10  an objectively reasonable application of *Strickland*'s performance and prejudice prongs and was

11  not based on an unreasonable determination of the facts, Ross is denied federal habeas relief for

12  ground 4(g).

13  **IV.    PENDING MOTIONS**

14       Ross moves for this court to conduct an evidentiary hearing "if it concludes any genuine

15  issues of material fact remain." (ECF No. 82, at 2). Ross explains that he "would consider calling

16  his trial counsel regarding the deficient performance prong" and "would consider testifying

17  himself about the relationship with counsel and calling additional witnesses as well." (*Id.*, at 6).

18  This court has already determined that Ross is not entitled to relief, and neither further factual

19  development nor any evidence that may be proffered at an evidentiary hearing would affect this

20  court's reasons for denying relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the

21  record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

22  court is not required to hold an evidentiary hearing."); *see also* 28 U.S.C. § 2254(e)(2). As such,

23  the motion for an evidentiary hearing is denied.

The respondents move to strike the new arguments in Ross's reply brief or, alternatively, for leave to file a surreply. (ECF No. 83). The respondents contend that "[i]ts fundamentally unfair for Ross to obscure or omit his argument about how he intends to satisfy the requirements of 28 U.S.C. § 2254(d) until his reply brief so as to preclude [them] from addressing those arguments" in their answering brief. (ECF No. 87, at 2). It is commonplace in this district for lawyers to file habeas petitions that assert the core facts of claims but to not provide a particularized analysis of 28 U.S.C. § 2254(d) deference until the time of their reply brief. However, it appears that Ross took this practice of withholding arguments until the reply brief to another level. For example, as the respondents note, Ross simply concluded that he was prejudiced in his first-amended petition but then expounded on the ways he was prejudiced in his reply brief. While this court does not condone the practice of concealing necessary arguments until a reply brief, this court does not find that striking Ross's new arguments in his reply brief or ordering a surreply from the respondents serve judicial economy in this case given that this court has already determined that Ross is not entitled to federal habeas relief. The motion to strike or for leave to file a surreply is denied.

## V.   CERTIFICATE OF APPEALABILITY

This is a final order adverse to Ross, so Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability. This court has *sua sponte* evaluated the claims within the first-amended petition for suitability for the issuance of a certificate of appealability. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S.

473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a certificate of appealability will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this court's procedural ruling was correct. *Id.*

Applying these standards, this court finds that a certificate of appealability is unwarranted.

## VI.    CONCLUSION

**IT IS THEREFORE ORDERED** that the first-amended petition for writ of habeas corpus under 28 U.S.C. § 2254 [ECF No. 17] is denied.

**IT IS FURTHER ORDERED** that the motion for an evidentiary hearing [ECF No. 82] is denied.

**IT IS FURTHER ORDERED** that the motion to strike Ross's reply brief or, alternatively, to file a surreply [ECF No. 83] is denied.

**IT IS FURTHER ORDERED** that a certificate of appealability is denied.

**IT IS FURTHER ORDERED** that the Clerk of the Court (1) substitute Ronald Oliver for Respondent Calvin Johnson, (2) enter judgment, and (3) close this case.

Dated:    April 23, 2024.

_____
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE

31